UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Nos. 3:15-00141 |
| | ) | JUDGE CAMPBELL |
| EDDIE LAMAR JOHNSON | ) | |

MEMORANDUM AND ORDER

Pending before the Court are the Defendant's Motion To Suppress Evidence Stemming From Illegal And Warrantless Arrest Of Mr. Johnson (Docket No. 33); Motion To Suppress Illegally Obtained Statements Of Mr. Johnson (Docket No. 34); and Motion To Suppress Evidence Derived From Illegal Search Of 3627 Fox Den Lane And Motion Requesting *Franks* Hearing (Docket No. 35). The Court held a hearing on the Motions on February 17, 2016.

Motion To Suppress Illegally Obtained Statements Of Mr. Johnson (Docket No. 34)

As the Court ruled at the hearing, because the Government has indicated that it will not seek to introduce at trial any of the statements made by the Defendant to law enforcement officers, the Motion To Suppress Illegally Obtained Statements Of Mr. Johnson (Docket No. 34) is MOOT. The Government shall not introduce any of the Defendant's statements at trial without advance notice to the Court and the Defendant.

Motion To Suppress Evidence Stemming From Illegal
And Warrantless Arrest Of Mr. Johnson (Docket No. 33)

Through this Motion, the Defendant challenges his arrest on July 23, 2015 after officers

stopped the car in which he was traveling. The Defendant claims that there was insufficient probable cause to support the arrest.

To determine whether officers have probable cause for an arrest, a court "'must determine whether at that moment the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that a suspect had committed or was committing an offense.'" United States v. Stubblefield, 682 F.3d 502, 508 (6th Cir. 2012)(quoting United States v. Smith, 549 F.3d 355, 359 (6th Cir. 2008)). The court is to view the facts and circumstances of the arrest from the viewpoint of an objectively reasonable police officer. Id. To meet the probable cause standard, the officers must have had more than mere suspicion, but they are not required to possess evidence "'sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt.'" Id. (quoting United States v. Romero, 452 F.3d 610, 616 (6th Cir. 2006)).

The Sixth Circuit has also held that "when a group of agents in close communication with one another determines that it is proper to arrest an individual, the knowledge of the group that made the decision may be considered in determining probable cause, not just the knowledge of the individual officer who physically effected the arrest." United States v Woods, 544 F.2d 242, 260 (6th Cir. 1976). See also United States v. Lyons, 687 F.3d 754, 766-69 (6th Cir. 2012). Similarly, "[w]hen a superior officer orders another officer to make an arrest, it is proper to consider the superior's knowledge in determining whether there was probable cause." Id.

The following individuals testified at the evidentiary hearing in this case: Agents Will Evans and Lon Chaney of the Clarksville Police Department; Agent James West of the Drug

Enforcement Agency ("DEA"); and DEA Task Force Officers Jesse Pilote and James Whitsett.

The testimony at the hearing indicates that a wiretap investigation targeting Usvaldo Mejia led DEA agents to suspect that an individual referred to by agents as "UM [unknown male] 170" was periodically discussing the purchase of several kilograms of cocaine from Mejia for resale in Middle Tennessee.[1] In July, 2015, DEA agents in Nashville intercepted a call in which Mejia and UM 170 used language the DEA interpreted as indicating that UM 170 wanted to purchase 10 kilograms of cocaine from Mejia. In an effort to identify UM 170, DEA agents obtained GPS location data for the cell phone used by UM 170 during the calls with Mejia. The GPS location data indicated that the phone was consistently located in Clarksville, Tennessee. As a result, Agent West and Officer Pilote provided information about the intercepted phone calls and the GPS location data for UM 170, to Officer Whitsett, and Agents Evans and Chaney, and asked for their assistance in identifying UM 170. Based on that information, Agent Evans testified that he conducted occasional surveillance in the area of Fox Den Lane in Clarksville, the area provided by the GPS location data, but did not notice anything unusual in the weeks leading up to July 23, 2015.

On July 23, 2015, DEA agents intercepted calls in which Mejia indicated that he was to receive a large shipment of cocaine. After taking possession of the cocaine, Mejia made calls to three major customers, one of whom was UM 170. Those calls were not answered. This information was relayed by Agent West and Officer Pilote to Officer Whitsett and Agents Evans

---

[1] By separate Order, the Court has denied the Defendant's challenge to the admissibility of the wiretap evidence.

and Chaney. Agent Evans testified that while conducting surveillance in the area, the officers observed the Defendant leave the residence at 3627 Fox Den Lane and drive away in a black Ford Mustang. The GPS location data indicated that the phone associated with UM 170 was in the car with the Defendant as the officers followed the car throughout Clarksville. The officers continued to conduct surveillance of the car and the residence. In addition, officers learned that electricity at the residence had been in the name of Ashley Hooper for the last month; that police had responded to domestic violence complaints Ms. Hooper made against the Defendant; that Ms. Hooper and the Defendant had children together; and that the Defendant had been arrested for drug conspiracy and possession of cocaine for resale.

Later in the day, the DEA arrested Mejia, and he began cooperating with the agents. As part of that cooperation, agents obtained Mejia's phone, which contained a contact for "Johnson" with the cell phone number associated with UM 170. In addition, Mejia identified a photograph of the Defendant as UM 170. Mejia also told the agents that the Defendant had purchased 10 to 15 kilograms of cocaine from him over the course of their relationship, generally two to three kilograms at a time. At the direction of the DEA, Mejia also placed calls to UM 170 in an attempt to sell cocaine to him, and at some point, the two spoke about UM 170 traveling to meet with Mejia later in the evening. According to Agent West and Officer Pilote, all this information was provided to the officers in Clarksville on an ongoing basis throughout the day. The officers continued surveillance of the Defendant, but he did not leave Clarksville to meet with Mejia.

Shortly before midnight, the investigators determined that the Defendant should be arrested. Consequently, officers in Clarksville stopped the Defendant's car and arrested him for participating in a cocaine conspiracy with Mejia. During a search of the Defendant incident to

arrest, the officers found cocaine, and cell phones (but not the phone associated with UM 170).[2] Agent Evans drafted an affidavit in support of a search warrant for 3627 Fox Den Lane, that was later signed by a General Sessions Court Judge, and executed at the residence. Officers seized multiple kilograms of cocaine, a quantity of marijuana, two firearms, ammunition, and other items. The phone associated with UM 170 was never found.

The Court concludes that the evidence presented at the hearing supports the officers' determination that there was probable cause to believe the Defendant had been engaged in a drug trafficking conspiracy at the time he was arrested. That evidence includes the intercepted wiretap conversations between Mejia and UM 170 about potential cocaine sales; GPS location data for the phone used by UM 170 and surveillance by officers that led to identification of the Defendant as UM 170; Mejia's subsequent identification of the Defendant's photograph and his statements regarding prior drug trafficking transactions with the Defendant; and the contact information for the Defendant stored in Mejia's phone. Accordingly, the Defendant's Motion To Suppress Evidence Stemming From Illegal And Warrantless Arrest Of Mr. Johnson (Docket No. 33) is DENIED.

### Motion To Suppress Evidence Derived From Illegal Search Of 3627 Fox Den Lane And Motion Requesting *Franks* Hearing (Docket No. 35)

Through this Motion, the Defendant argues that the affidavit supporting the application for the search warrant contained material misrepresentations and omissions, requiring a Franks

---

[2] The GPS location data for the phone associated with UM 170 indicated that the phone was left at 3627 Fox Den Lane earlier that day.

hearing, and that the search warrant is otherwise unsupported by probable cause.

To issue a search warrant, a judicial officer must "'make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Brown, 801 F.3d 679, 686 (6th Cir. 2015)(quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Probable cause requires more than mere suspicion but less than prima facie proof. See, e.g., United States v. Ray, 803 F.3d 244, 275 (6th Cir. 2015). A search warrant application for a residence must demonstrate a nexus between the residence and the evidence sought, i.e., why the officer expects to find evidence in the residence rather than in some other place. Brown, 801 F.3d at 686-87. A reviewing court must uphold the validity of the search warrant if it determines, based on the information contained in the four corners of the search warrant application, that the issuing officer had a '"substantial basis for . . . conclud[ing] that probable cause existed.'" Ray, 803 F.3d at 275.

Under Franks v. Delaware, 483 U.S. 154 (1978), a defendant may be entitled to an evidentiary hearing to determine whether a search warrant affidavit contains false statements that undermine the finding of probable cause. In order to show he is entitled to a Franks hearing, the defendant must make a substantial preliminary showing that: (1) specific false statements, made intentionally or with reckless disregard for the truth about material matters, were included in the search warrant affidavit; and (2) those statements were necessary to a finding of probable cause. See, e.g., United States v. Mastromatteo, 538 F.3d 535, 545 (6th Cir. 2008). Omissions can be falsehoods, but the defendant must make a "'strong preliminary showing' that the affiant *intended to mislead the judge* by omitting information from the affidavit." United States v. Jones,

6

533 F. App'x 562, 567 (6th Cir. August 12, 2013)(emphasis in original).

The search warrant affidavit in this case was executed by Agent Evans, and provides, in pertinent part, as follows:

> In June 2015, the Drug Enforcement Administration (DEA) began an investigation that focused on the controlled substance trafficking activities of Usvaldo MEJIA, who was identified as a supplier of multiple kilograms of cocaine throughout the Nashville and Clarksville areas. As a result of the investigation of MEJIA, sufficient evidence was collected to apply for a Federal Court order authorizing the interception of wire communications ('wiretap order') on the phone used by MEJIA, TARGET TELEPHONE 1, 615-775-1403 (TT1). Interception of wire communications of TARGET TELEPHONE 1 began on June 26, 2015 and was monitored in Atlanta, Georgia by professional monitors contracted by the DEA.
>
> During the course of investigation, DEA Agents identified a cocaine customer of MEJIA'S and a co-conspirator of the drug trafficking organization as utilizing cellular telephone 615-830-1695 and given the identification of UM170. As a result, a Federal Court Order to collect the geolocation information of cellular telephone 615-830-1695 was authorized. The information from the order showed that the cellular telephone was frequently located at 3627 Fox Den Lane.
>
> On July 23, 2015, DEA Special Agent Jimmy WEST and DEA Task Force Officer Jessie PILOTE advised your Affiant and Agents of the Clarksville Police Department that they intercepted communications that indicated approximately 30 kilograms of cocaine arrived in Nashville, Tennessee by semi-truck and MEJIA took custody of the shipment. MEJIA took the cocaine to his residence and began to contact customers to inform them that the cocaine had arrived. MEJIA placed several unanswered phone calls to UM170.
>
> Agents of the Clarksville Police Department established surveillance at 3627 Fox Den Lane and observed a black male enter a vehicle and leave the residence. The geolocation information confirmed that cellular telephone 615-830-1695 was with the occupant of the vehicle. Surveillance units were able to positively identify the operator of the vehicle as Eddie Lamar JOHNSON.
>
> According to the Clarksville Department of Electricity records as of July 23, 2015, Ashley HOOPER is the account holder for 3627 Fox Den Lane with an active account since June 2015. Clarksville Police Department records indicated that on three separate occasions, officers were called for domestic disputes between HOOPER and JOHNSON. The reports indicate that HOOPER is

JOHNSON'S girlfriend.

DEA Agents secured MEJIA'S residence and placed him in custody. MEJIA cooperated with authorities and admitted that he had 27 kilograms in his residence and $105,000 dollars in his vehicle. He was shown a photograph of Eddie Lamar JOHNSON and identified him as a cocaine customer that he knew as JOHNSON. MEJIA stated that JOHNSON would purchase 2-3 kilograms of cocaine at a time from him (MEJIA) and that JOHNSON had received between 10 and 15 kilograms of cocaine over the course of their relationship.

At approximately 20:14:56 EDT, JOHNSON (UM170) called MEJIA and asked if he was okay, which your Affiant knew to mean if MEJIA had cocaine available for purchase. MEJIA informed JOHNSON that he did and asked why he (JOHNSON) was not answering the phone. JOHNSON told MEJIA that he was sleeping. MEJIA asked if JOHNSON wanted to start to work, which your Affiant knew to mean if JOHNSON was ready to purchase cocaine. JOHNSON said the he was and said that he would travel to MEJIA and would leave in an hour.

At approximately 21:58:08 EDT MEJIA called JOHNSON and asked if he was coming. JOHNSON stated that he was but he had to take care of some things and would leave in a minute.

According to JOHNSON'S criminal history, he has had several felony narcotics related arrests that included a drug conspiracy charge and possession of cocaine for resale.

On July[3] 23, 2015, at approximately 2355 hours, after Agents had maintained surveillance on JOHNSON after he had departed 3627 Fox Den Lane, Agents conducted a traffic stop on the vehicle that JOHNSON was operating. JOHNSON was taken into custody. A search revealed a felony amount of cocaine.

(Docket No. 35-1).

For the reasons stated on the record at the evidentiary hearing, the Defendant is not entitled to a <u>Franks</u> hearing because he has failed to demonstrate that the search warrant affidavit

---

[3] The typewritten word "June" has been struck through, and the word "July" has been handwritten on top of it in the Affidavit.

8

contained a false statement or omission about a material matter, made either intentionally or with reckless disregard for the truth.

Alternatively, the Defendant argues that the affidavit lacks probable cause. The Defendant specifically contends that the affidavit fails to demonstrate a nexus between the alleged criminal conduct and the Fox Den Lane residence.

The Court concludes that the information in the search warrant affidavit provides a substantial basis for the issuing judge's determination that probable cause existed for a search of 3627 Fox Den Lane. First, the affidavit provided a substantial basis for concluding that the Defendant was involved in a drug trafficking conspiracy. That evidence includes the description of the intercepted wiretap conversations between MEJIA and UM 170 about potential cocaine sales; the geolocation information for the phone used by UM 170 and surveillance by officers that led to identification of the Defendant as UM 170; and Mejia's subsequent identification of the Defendant's photograph and statements regarding prior drug trafficking transactions with the Defendant. Second, the affidavit provided a substantial basis for concluding that the Defendant resided or spent a great deal of time at 3627 Fox Den Lane. That evidence includes the geolocation information indicating that the phone used by the Defendant (UM 170) was frequently located at that address; surveillance through which officers observed the Defendant leaving and returning to the address; electricity records indicating that Ashley Hooper held an account for the address beginning in June, 2015; and court records indicating that Ms. Hooper and the Defendant had, at least at some point, been involved in a romantic relationship. Finally, the affidavit provided a substantial basis for concluding that cocaine and other evidence of drug trafficking would be found at the residence. Officers observed the Defendant leave the residence

in his car, and after his subsequent arrest in the car, discovered cocaine. See also United States v. Brown, 801 F.3d at 688-90 (Issuing judge is entitled to draw a reasonable inference that evidence of a crime is likely to be found where known drug traffickers reside).

Because the search warrant was supported by probable cause, the Defendant's Motion To Suppress Evidence Derived From Illegal Search of 3627 Fox Den Lane And Motion Requesting *Franks* Hearing (Docket No. 35) is DENIED.

It is so ORDERED.

*[signature]*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE